UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:08-CV-00094-R

RICKEY BERNARD JONES                                                      PLAINTIFF

v.

KENTUCKY DEPARTMENT OF CORRECTIONS, et al.,          DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court upon Defendants Kentucky Correctional Health Services Network ("KCHSN") and Steven I. Shedlofsky's Motion for Summary Judgment (DN 121). Plaintiff has responded (DN 129) and Defendants have replied (DN 133). This motion is now ripe for adjudication. For the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED.

Defendants CorrectCare Integrated-Health, Inc. ("CC"), Arthur Hellebusch, Anthony Baxter, Linda Goins, and Jenny Kahler have also moved for summary judgment (DN 138). Plaintiff has responded (DN 142). This motion is now ripe for adjudication. For the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED.

Plaintiff has also filed a number of different motions for summary judgment or partial summary judgment with the Court. (DN 130; DN 132; DN 136). As summary judgment for Defendants is proper, these motions are DENIED.

## BACKGROUND

Plaintiff Rickey Bernard Jones is an inmate in the Kentucky State Penitentiary. Jones brings this action, *pro se*, alleging the following claims: individual and official capacity claims for monetary and injunctive relief under 42 U.S.C. § 1983, claims under the Americans with

1

Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.) ("ADA"), claims under the Rehabilitation Act of 1973 (29 U.S.C. § 701, et seq.) ("RA"), Kentucky law claims of negligence, and violations of section seventeen of the Kentucky Constitution. Jones filed the action against a litany of individuals involved in his medical care, including KCHSN, CC, Shedlofsky, Hellebusch, Baxter, Goins, and Kahler. KCHSN provides health care services for prisoners in Kentucky's prison system while Shedlofsky is the Director of the Hepatitis Management Program for the Kentucky Department of Corrections. CC is a company that provides medical services to a number of the correctional facilities in Kentucky. Hellebusch, Baxter, Goins, and Kahler are corporate officers of CC.

Jones's verbose and convoluted filings as well as the length and complexity of his medical conditions have stymied this Court in its efforts to create an unambiguous time line of his infirmities and the procedures undertaken to treat him. After carefully reviewing the record before the Court as well as the various medical documentation submitted, the Court addresses these motions with the following undisputed factual foundation:

- On July 8, 1997, laboratory tests on Jones's blood tested positive for hepatitis C antibodies. DN 92-1 at 9.

- Soon after these results, medical personnel at the Department of Corrections referred Jones to a gastroenterologist from February of 1998 until December of 1999. DN 92-16 at 1-10. Medical staff also continued to monitor Jones's liver functions through periodic blood testing. DN 92-1 at 11-15; DN 92-2; DN 92-3.

- In June of 2002, medical personnel, after reviewing Jones's ALT levels, decided that he did not qualify for the Department of Correction's Hepatitis C Management Plan ("Management Plan"). As such, additional testing or liver biopsies for Jones were canceled. DN 92-1 at 8.

- The Department of Corrections monitored Jones's condition with continued blood testing and regular check-ups at the sick call in the penitentiary. DN 92-22; DN 92-23; DN 92-24.

2

- In January of 2000, upon his request, Jones was provided copies of his medical records after he disagreed with the decisions of the medical staff. DN 92-16 at 11.

- From February to March of 2005, Jones corresponded with individuals associated with the Management Plan, requesting additional treatment for his illness. DN 92-16 at 12; DN 92-17 at 2. In a letter dated March 23, 2005, the commissioner of the Management Plan acknowledged that Jones's increased ALT levels merited further laboratory work. DN 92-17 at 3.

- On April 21, 2005, Jones's blood was examined again for hepatitis using the most accurate laboratory test for the disease available. He tested negative for hepatitis C antibodies. Jones was again tested on November 1 of the same year with similar results. DN 121-2; DN 138-6; DN 138-7.

- On May 31, 2005, Jones was advised that because he had tested negative for hepatitis C, he did not qualify for admission to the Management Plan. DN 92-17 at 4.

- Overall, from 1999 to present, health officials have tested Jones's liver condition on more than twenty-five different occasions. These tests have found mildly elevated enzyme levels in only seven of the tests. DN 138-4; DN 138-5.

- Finally, Jones has been treated for or complained of the following ailments over the last four years: diabetes, blindness, substance abuse, antisocial personality disorder, hypertension, hemorrhoids, gastro-esophageal reflux disease, dyslipidemia, smoking, intravenous drug use, colon polyps, and chronic diarrhea. DN 138-15; DN 138-16; DN 138-17.

In June of 2008, Jones filed a complaint with the above-stated causes of action. Jones claims that despite his prior "diagnosis" in 1997, Defendants have failed to order or conduct further testing, such as a liver biopsy, to determine the extent of his liver damage. Jones states that these claims, along with other complaints about the overall prison health care system, constitute deliberate indifference to his serious medical condition in violation of the Eighth and Fourteenth Amendments and that the refusal of further treatment constitutes negligence under Kentucky law. He also contends that Defendants, by their action and inaction, violated the ADA, the RA, and the Kentucky Constitution. With regard to the tests in 2005, Jones maintains

these readings are unreliable and that the testing procedure "is flawed because the U.S. Food and Drug Administration (FDA) has not approved such testing procedure and it lacks standardization requirements." DN 84-2 at 5.

KCHSN and Shedlofsky moved for summary judgment on September 22, 2010. Shedlofsky submitted an affidavit with the motion, outlining his background as a physician and his opinion that Jones is not infected with hepatitis C. Shedlofsky lays out in his affidavit that he is a professor of internal medicine at the University of Kentucky with extensive training in diseases of the liver like hepatitis C. DN 121-2 at 1. He also states that the negative tests of April and November of 2005 mean "the hepatitis C virus is not detectable in [Jones's] blood." *Id*. In explaining the positive result in 1997, he testifies that 25-35% of patients who receive a positive test for the hepatitis virus are spontaneously cleared of the infection. *Id*. at 4. Shedlofsky goes on to say that while Jones has had elevated liver enzymes in the past, a symptom consistent of a hepatitis C infection, this could have been the result of other medical problems Jones suffers from, or side effects from medication that he takes, or a combination of the two. *Id*. at 4. He concludes that a liver biopsy and other treatments are unnecessary "since [Jones] has tested negative twice for [the hepatitis C virus]." *Id*. at 4-5.

CC and the other Defendants moved for summary judgment on December 12, 2010, offering a number of unique arguments as well as adopting the legal and factual assertions set forth in KCHSN and Shedlofsky's motion.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

4

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

### I. There is no genuine issue of material fact as to whether Jones suffers from Hepatitis C.

Simply put, Defendants are entitled to summary judgment as no reasonable jury could find that Jones suffers from hepatitis C or has suffered injury from the disease. *See CMACO Automotive Sys., Inc. v. Wanxiang Am. Corp.*, 589 F.3d 235, 242 (6th Cir. 2009) (stating that summary judgment is appropriate when no reasonable jury could find for the non-moving party). The following is the uncontradicted evidence before this Court: (1) although Jones did test

5

positive for hepatitis C antibodies in 1997, two subsequent lab-tests performed by non-parties to this litigation found that he was not suffering from the disease; (2) the lab report that contained the original test results detailing the presence of hepatitis C antibodies in his blood also warned Jones that a positive test could be the result of a number of "interfering substances" or antibodies associated with the virus; (3) in his Pretrial Memorandum, Jones cited to medical literature on hepatitis C that unambiguously states the particular tests utilized to review Jones's 1997 diagnosis are the "best approach to confirm the diagnosis of hepatitis C"; (4) Shedlofsky, a physician specializing in disorders of the liver, has affirmed that given the two negative tests in 2005, he is certain that Jones does not have hepatitis; (5) the medical professionals who deal with Jones on a regular basis agreed with Shedlofsky's diagnosis that Jones does not suffer from this virus; (6) repeated and thorough testing of Jones blood demonstrates that his liver is functioning normally and thus he has not been injured by a hepatitis C infection. Upon careful review of this evidence, Jones's allegations are insufficient to create an issue of material fact. While Jones does offer the test results of 1997 as well as his own unwavering belief that he has actually contracted the virus, the sum of the evidence arrayed against him would be enough to convince any reasonable juror.

Moreover, Jones premises his complaint on a variety of unreasonable inferences that the Court cannot accept in the context of this summary judgment motion. While Jones claims that the health care professionals of the Kentucky prison system have repeatedly lied to him that he does not have hepatitis C, the record is devoid of evidence supporting this assertion. Instead, the evidence shows that medical personnel have been quite candid with Jones that he is virus-free. He also alleges that the Kentucky prison system has systematically failed to treat a number of

inmates diagnosed with hepatitis C due to cost cutting measures, a practice that has led to the death of numerous prisoners in Kentucky. There is no evidence of this allegation within the record as well. Finally, this action is premised upon the inference that despite the overwhelming evidence put forward that he does not suffer from hepatitis C, Jones's assertion to the contrary along with the 1997 test is sufficient to create a material fact as to whether he has the virus. He is incorrect. Jones has not submitted an affidavit or other medical evidence indicating he has the disease, while documentation offered by Defendants like Shedlofsky's affidavit and an assortment of medical tests demonstrate that Jones's allegations are divorced from a basis in fact. While Jones is understandably at a disadvantage due to his incarceration in gathering evidence, only reasonable inferences need be construed in favor of Jones when considering this motion. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587. The reasonable inferences that could be drawn in Jones's favor do not present a genuine issue of material fact as to whether Jones suffers from hepatitis C.

Jones responds that even if he is no longer infected with the virus, there is a genuine issue regarding whether he should have received treatment between July 8, 1997, when he tested positive for hepatitis C antibodies and the laboratory results of 2005 that reported he was free from infection. DN 92-3 at 22. Jones charges that despite his positive test results, no affirmative action was taken on his behalf during this time period and medical personnel deliberately ignored elevated levels of alanine aminotransferase ("ALT")[1] in his blood, which caused him to

---

[1] Defendants cited WebMD when defining ALT and its significance in measuring a liver's health:

> An alanine aminotransferase (ALT) test measures the amount of this enzyme in the blood. ALT is found mainly in the liver, but also in smaller amounts in the kidneys,

7

suffer a variety of serious side effects of hepatitis C. Forgetting momentarily both the alternative explanations detailed in Shedlofsky's affidavit why Jones may have tested positive in 1997 and the tests of 2005 that affirmatively ruled out his infection, the inaction by medical professionals in this eight year interval does not give rise to a cognizable claim for two reasons. First, Jones was not "ravaged" by the hepatitis C infection from 1997 to 2005 as he claims; instead, the most recent tests indicate that his ALT levels are well within the prescribed ranges and consequently his liver is functioning normally. *See* DN 138-3 at 2, 5. Therefore, even if his hepatitis C infection did go untreated for eight years, Jones has apparently suffered no lasting injury. Second, Jones has either mischaracterized the purpose of the ALT testing or he does not fully grasp the impact of this medical procedure. Between 1997 to present, Jones's ALT levels were measured on some twenty-five occasions. The literature submitted with these motions demonstrate that tests monitoring ALT levels are sensitive measures of injuries to the liver as a result of multiple causes, including hepatitis C. Thus, in checking his ALT levels, medical professionals were in fact monitoring Jones's potential hepatitis infection by tracking any potential liver damage, even if they were not seeking to affirmatively rule-out hepatitis C with direct testing. That the testing revealed normal or only mildly elevated ALT levels indicates that

---

> heart, muscles, and pancreas. ALT was formerly called serum glutamic pyruvic transaminase.
>
> ALT is measured to see if the liver is damaged or diseased. Low levels of ALT are normally found in the blood. But when the liver is damaged or diseased, it releases ALT into the bloodstream, which makes ALT levels go up. Most increases in ALT levels are caused by liver damage.

DN 138-9 at 1-2 (citing *Alanine Aminotransferase (ALT)*, WebMD, http://www.webmd.com/digestive-disorders/alanine-aminotransferase-alt (last updated November 05, 2009)).

Jones's liver was functioning normally or within parameters that did not show the presence of the severe liver damage typically manifested in a hepatitis C infection. The Court believes that if Jones's liver condition had deteriorated as a result of hepatitis or any other reason, the medical team at the Department of Corrections could have acted with the appropriate procedures. However, as Jones's ALT levels never rose to a threatening level, and instead exhibited a healthy liver, further action between the tests of 1997 and 2005 was unnecessary.

Notwithstanding the positive test of July 8, 1997, there is no genuine issue of material fact that as to whether Jones is infected with or suffered any injury as a result of hepatitis C. As all Jones's claims are premised on the notion that he is suffering from this virus, they are all fatally defective.

### **II. Jones has not provided the necessary expert testimony to prove a claim for negligent medical care.**

Ignoring for a moment that Jones is neither infected with hepatitis C nor has suffered any measurable harm to his liver from the disease, Jones's claims of negligent medical care must be dismissed because he has failed to submit expert medical testimony supporting his claims. Claims of negligent medical care fall under state law and Kentucky law requires that "[n]egligence in medical malpractice cases must be established by expert testimony unless negligence and injurious results are so apparent that a layman with general knowledge would have no difficulty recognizing it." *Morris v. Hoffman*, 551 S.W.2d 8, 9 (Ky. Ct. App. 1977) (citing *Johnson v. Vaughn*, 370 S.W.2d 591 (Ky. 1963)). Jones will be required to show both that his liver has been injured as a result of the negligent medical treatment of his hepatitis

9

infection[2] and that the healthcare professionals' inaction caused these injuries as opposed to his other medical problems. With such complex causation issues, there is little question that Jones's allegations do not fall into the laymen's exception; thus, without expert testimony supporting his position, his claims of negligent medical treatment must fail. As Jones has yet to provide supporting expert testimony or pertinent affidavits, dismissal of these claims is proper.

### III. Defendants have not been deliberately indifferent in administering medical care to Jones.

Again, assuming that Jones could show that he was infected with hepatitis C, Defendants have not been deliberately indifferent to his medical needs. The Sixth Circuit has consistently held that for a prisoner "[t]o establish an Eighth Amendment violation, the plaintiff must show that the defendant acted with deliberate indifference to his basic needs." *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009).[3] In *Jones v. Muskegon Cnty*, the Sixth Circuit Court of Appeals described the framework necessary for a prisoner to prove a medical claim under the Eighth Amendment:

> A Section 1983 claim asserting "[a] constitutional [violation] for denial of medical care has objective and subjective components." *Id*. The objective component requires the existence of a "sufficiently serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted). Such a medical need has been defined as one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a

---

[2] This is impossible of course as Jones is not infected with hepatitis and has not suffered lasting injury to his liver from the infection.

[3] The Kentucky Constitution also protects against cruel and unusual punishment. K.Y. Const. § 17. While Jones makes separate claims under the Eighth Amendment and section seventeen of the Kentucky Constitution, the pertinent language in these documents is virtually identical. As such, these claims may be jointly considered under the same analysis. *Neal v. Carron*, 3:04-CV-13, 2006 WL 522361, *9-10 (W.D. Ky. 2006); *Riley v. Kentucky*, 120 S.W.3d 622, 633 (Ky. 2003).

> doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted). The subjective element requires "an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'" *Blackmore v. Kalamazoo Cnty*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)).

*Jones v. Muskegon Cnty*, 625 F.3d 935, 941 (6th Cir. 2010) (internal citations altered). Precedent also distinguishes between violations under the Eighth Amendment for deliberate indifference and situations where a prisoner has been the recipient of inadequate medical treatment. This circuit has cautioned that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

A review of the facts does not reveal a story of incompetent or callous medical professionals treating Jones. On the contrary, Jones underwent over twenty-five different liver screenings and was tested for hepatitis on three separate occasions. This battery of procedures allowed healthcare professionals to monitor his liver's ALT levels and the proper measures could have been taken had these tests indicated the presence of liver damage. However, not only were serious irregularities in his liver absent for more than ten years, but the most recent tests indicate that his liver is quite healthy and he not infected with hepatitis. The Court believes that Jones's treating physicians chose to treat him in accordance with the prevailing guidelines of Department of Corrections. Since the record indicates that Jones is neither infected with hepatitis C nor has suffered any ill effects from the positive test of July 1997, the Court will not substitute its own judgment for that of trained medical professionals. While Jones may not have received the type of treatment he desires, precedent is unambiguous that under the Eighth

11

Amendment, difference of opinion between the patient and healthcare professionals does not give rise to a constitutional claim. *See Byrd v. Wilson*, 701 F.2d 592 (6th Cir. 1983); *Tolbert v. Eyman*, 434 F.2d 625 (9th Cir. 1970); *Alexander v. Federal Bureau of Prisons*, 227 F. Supp. 2d 657, 666 (E.D. Ky. 2002). Therefore, Jones's claims under the Eighth Amendment and section seventeen of the Kentucky Constitution for deliberate indifference must fail.

### IV. Jones's claims under the ADA and RA are not cognizable under the current circumstances.

Finally, Jones's claims under the ADA and RA are not cognizable because he is not currently suffering from hepatitis C. Therefore, he is neither suffering from a disability as defined under the ADA nor being discriminated against by state officials on the basis of a disease he does not have. Consequently, there is no genuine issue of material fact and therefore summary judgment is appropriate on these claims.

## CONCLUSION

FOR THE FOREGOING REASONS, Defendants' Motions for Summary Judgement (DN 121; DN 138) are GRANTED. Plaintiff's Motions for Summary Judgment and Partial Summary Judgment (DN 130; DN 132; DN 136) are DENIED.

An appropriate order shall issue.